UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-11869-RGS

HARRIET MENEZES

v.

U.S. DEPARTMENT OF TRANSPORTATION, and
ANTHONY R. FOXX, Sec'y, U.S. Dep't of Transp.

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

August 31, 2017

STEARNS, D.J.

Harriet Menezes brought this lawsuit against her former employer, the United States Department of Transportation (DOT), claiming, inter alia, a failure to accommodate her disabilities; retaliation and discriminatory treatment based on her disability, religious beliefs, race, gender, and age; and a creation of a hostile work environment. After a parade of dispositive motions and amended complaints, all that remains is a Title VII-retaliation claim based on Menezes' filings with the Equal Employment Opportunity Commission (EEOC). The claim is targeted at several of Menezes' Federal Aviation Agency (FAA) supervisors.[1] Discovery in this case ended on

---

[1] The court has previously admonished Ms. Menezes that her case is now limited to the retaliation claim. Notwithstanding the admonition, she

February 28, 2017. On May 12, 2017, the government moved for summary judgment. Menezes filed her Opposition on June 16, 2017.

BACKGROUND

Menezes recites five EEOC complaints that she filed between December 12, 2010, and March 22, 2013 (prior to her termination), that she alleges incited her managers to retaliate against her. The genesis and chronology of the relevant EEOC complaints are as follows.

Menezes initiated an EEOC proceeding on December 6, 2010, complaining that an FAA manager, Scott Brackett, had discriminated against her. On January 10, 2011, Menezes filed a formal EEOC complaint detailing a number of alleged acts of discrimination. *See* Gov't Ex. 1 at 2.

On January 13, 2012, Carlos Pestana, another of Menezes' supervisors, issued her a Letter of Reprimand for "Resisting Management Authority," after Menezes refused Pestana's order that she move to another workspace. Menezes told him that he was engaged in "military style management again." *See* Gov't Ex. 2 at 1-2. The reprimand admonished her for "Inappropriate Conduct," based on an email she had sent to a co-worker complaining about her managers' work performance and her job responsibilities. On January

---

has filed a plethora of documents with her Opposition, few of which have any bearing on her retaliation claim.

20, 2012, Menezes filed a second formal EEOC Complaint (EEOC No. 520-2012-00432), regarding Pestana's Letter of Reprimand, and seven claims of discrimination allegedly based on her Asian and White race, her brown skin color, her sex, her English birth, her age (51), her physical disabilities (cancer, sleep disorder, allergies), and a mental disability (anxiety), all occurring in the Fall of 2011, allegedly in reprisal for her first EEOC complaint.

On May 16, 2012, Pestana issued a Letter of Decision to Menezes imposing a three-day suspension (May 21-24, 2012) for Inappropriate Conduct after Menezes sent an email to Pestana and co-workers complaining that she was "feeling the same battered wife syndrome as your wife [Pestana's] mentioned in her divorce filing," and that Pestana was "an abusive man." Gov't Ex. 3 at 2. On June 3, 2012, the FAA assigned Menezes to a new supervisor, Angela Olson. On June 19, 2012, Menezes amended her pending EEOC Complaint to allege that the three-day suspension was the result of discrimination.

On August 23, 2012, Olson issued Menezes a "Notice of Proposed Suspension for Fourteen Days for Inappropriate Conduct." On September 24, 2012, she sent a Letter of Decision to Menezes imposing the suspension. This new charge of inappropriate conduct was based on an email Menezes

sent to two FAA managers, Colleen D'Alessandro and Diane Romanosky, accusing Pestana of falsifying a travel voucher. *See* Gov't Ex. 5. Olson noted that Menezes' recent 3-day suspension and prior reprimand "have done little to deter this latest instance of inappropriate conduct," and that her lack of remorse and failure to acknowledge any responsibility for her actions warranted progressive discipline. *Id.* at 2, 5. Menezes contacted an EEO counselor on October 12, 2012, to complain about the suspension, and filed a third formal EEOC complaint on January 28, 2013. *See* Gov't Ex. 6.

On February 12, 2013, Olson issued Menezes a "Notice of Proposed Removal for Inappropriate Conduct, Failure or Delay to Follow Instructions, and Defying Managerial Authority" based on Menezes' actions on December 3 and 4, 2012. Olson cited an email that Menezes had sent to her and fourteen other FAA employees stating that Olson had condoned "malicious gossip and speculations that management should not make to subordinates. . ." and had failed to investigate "false accusations made by an employee on alleged workplace violence." With regard to Menezes' "Failure or Delay to Follow Instructions," Olson cited: (1) Menezes' failure to respond to five requests to correct a discrepancy in her time and attendance report; (2) failing to prioritize work assignments as directed; (3) failing to comply with four instructions not to place a telephone call while Olson was questioning

4

her about a work assignment; (4) failing to give Olson the telephone before terminating the call so that Olson could speak to the other party; (5) failing to answer an incoming telephone call after three directives to do so; and (6) failing to notify Olson when she arrived at work at other than the scheduled start time. Olson also cited the following instances of Menezes "Defying Managerial Authority": (1) her refusal to tell Olson when she had arrived for work and stating that the question was an abuse of Olson's authority; (2) refusing to meet with Olson to discuss the appropriate use of emails and other communications and, again telling Olson that her request was an abuse of authority; (3) her refusal to apprise Olson of the current status of Menezes' work and again iterating the accusation of abuse of authority; and (4) Menezes' refusal to perform a particular work assignment and again telling Olson that the assignment was an abuse of her authority. *See* Gov't Ex. 7. Olson provided Menezes with 16 hours of excused absence to review the materials attached to the "proposed removal" memorandum and to file a reply. After receiving two extensions to prepare a response, on March 20, 2013, Menezes filed her rebuttal.

After six years of government service, Menezes was terminated from her position as an Administrative Officer at the FAA effective May 3, 2013. *See* Gov't Ex. 8. Menezes filed her next EEOC Complaint on July 3, 2013,

challenging her dismissal. Ultimately, Menezes withdrew her EEOC Complaint of January 28, 2013, and on May 19, 2015, filed a 60-page Complaint initiating this action.

## DISCUSSION

Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment . . . upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986).

> For purposes of summary judgment we are required to draw every reasonable inference in favor of the nonmoving party. However, at this stage we need not credit inferences that "rely on tenuous insinuation." *Nat'l Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 743 (1st Cir. 1995) (internal quotations omitted). Moreover, the nonmovant still has "the burden of producing specific facts sufficient to deflect . . . summary judgment. . . . " *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003).

*Dennis v. Osram Sylvania, Inc.,* 549 F.3d 851, 858 (1st Cir. 2008). A trial judge acts well within his authority on a summary judgment motion in assessing the reasonableness of the inferences that might be drawn from the circumstantial evidence. *Ricci v. Alternative Energy, Inc.*, 211 F.3d 157, 161-162 (1st Cir. 2000). "[A] mere challenge to the credibility of a movant's witnesses without any supporting evidence does not raise a trialworthy issue

of fact." *Moreau v. Local Union No. 247*, 851 F.2d 516, 519 (1st Cir. 1998); *see also Favorito v. Pannell*, 27 F.3d 716, 721 (1st Cir. 1994); *LaFrenier v. Kinirey,* 550 F.3d 166, 167-168 (1st Cir. 2008). "[O]n summary judgment, absent specific facts discrediting testimony from a witness associated with the movant, and absent a direct conflict in the testimony, the opponent (although entitled to have [his or her evidence taken as true), is not entitled to have the moving party's evidence positively disbelieved." *Grubb v. KMS Patriots, L.P.,* 88 F.3d 1, 4 (1st Cir. 1996).

Title VII makes it unlawful "for employers to retaliate against persons who complain about unlawfully discriminatory employment practices." *Ahern v. Shinseki,* 629 F.3d 49, 55 (1st Cir. 2010) (quoting *Noviello v. City of Boston*, 398 F.3d 76, 88 (1st Cir. 2005)). In order to prove retaliation under Title VII, a plaintiff must show "that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2528 (2013); *see also Ponte v. Steelcase Inc.*, 741 F.3d 310, 321 (1st Cir. 2014). To present a prima facie case of retaliation, a plaintiff is required to show that "she engaged in protected conduct, that she suffered an adverse employment action, and that a causal nexus exists between the protected activity and the adverse action." *Id.* If a plaintiff has established a prime facie showing of retaliation, the burden shifts to the

employer to articulate a legitimate, nondiscriminatory reason for the employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendant succeeds, "the burden shifts back to the plaintiff to show that the proffered legitimate reason is in fact a pretext and that the job action was the result of discriminatory animus." *Collazo v. Bristol-Myers Squibb Mfg., Inc.,* 617 F.3d 39, 46 (1st Cir. 2010). Evidence of retaliation under Title VII can be direct or circumstantial. *See DeCaire v. Mukasey*, 530 F.3d 1 (1st Cir. 2008).

It is undisputed that Menezes engaged in protected activity in filing her EEOC complaints, and that her termination by Olson constituted an adverse employment action.[2] It is also undisputed that Olson knew of Menezes' EEOC filings.

On the remaining issue of causation, the court will assume that Menezes has met the "relatively light burden of establishing a prima facie case of retaliation." *Mariani-Colón v. Dep't of Homeland Sec.,* 511 F.3d 216, 224 (1st Cir. 2007); *see also Sánchez-Rodríguez v. AT & T Mobility P.R., Inc.,* 673 F.3d 1, 15 (1st Cir. 2012) (holding that plaintiff had established a prima facie case of retaliation where approximately three months had transpired

---

[2] At the times Menezes made her EEOC filings, her supervisors were successively, Pestana and Olson (who had taken over supervision of Menezes on June 3, 2012, after she sent him the inflammatory email).

8

between the protected conduct and the material adverse action). Menezes was notified on February 12, 2013, that she would be terminated ("no earlier than 30 calendar days from the receipt of [the] notice."). Although her initial EEOC complaints were filed in 2010, she had filed her most recent EEOC complaint regarding her 14-day suspension on January 28, 2013. *See Garayalde-Rijos v. Municipality of Carolina*, 747 F.3d 15, 25 (1st Cir. 2014) (treating "temporal proximity" between adverse employment action and protected conduct as just one factor, "reinforced by other evidence," that supported a jury verdict of retaliation) (quoting *Trainor v. HEI Hospitality, LLC*, 699 F.3d 19, 28 (1st Cir. 2012)).

The burden therefore shifts to the FAA to "articulate a legitimate, nondiscriminatory reason" for Menezes' termination. The FAA points to abundant instances of Menezes' misconduct as an employee, her unrepentant acts of insubordination, her libelous statements about her supervisors, her attempts to incite co-workers against FAA management, her refusal to follow workplace directives, her disruptive behavior,[3] and her defiance of work rules. Gov't Ex. 4 at 3-6.

---

[3] Nicole Durbois-Romeo, who worked in space near Menezes and was uninvolved in the FAA's decision to terminate her, stated that Menezes was often loud, disruptive, and extremely insubordinate to management." *Id.* at 8. After learning of Durbois-Romeo's complaint, Menezes accused her and

In response, Menezes conends that Olson fabricated claims in order to buttress the decision to terminate her and that the complaints about her were simply a pretext to disguise Olson's (and Pestana's) discrimination. However, "[i]t is not enough for a plaintiff merely to impugn the veracity of the employer's justification; [she] must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: [] discrimination.'" *Melendez v. Autogermana, Inc.,* 622 F.3d 46, 52 (1st Cir. 2010) (quoting *Medina-Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 9 (1st Cir. 1990)).

> When assessing a claim of pretext in an employment discrimination case, a court's focus is necessarily on the motivations and perceptions of the decisionmaker. *Mesnick [v. Gen. Elec. Co.],* 950 F.2d [816], [] 824 [(1st Cir. 1991)]. Thus, as long as [the manager] believed that [the employee's] performance was not up to snuff – and [the employee] has presented no evidence suggesting that management thought otherwise – it is not our province to second-guess a decision to fire [her] as a poor performer. That is true regardless of whether, to an objective observer, the decision would seem wise or foolish, correct or incorrect, sound or arbitrary. *See Velázquez-Fernández v. NCE Food, Inc.*, 476 F.3d [6,] []12 [(1st Cir. 2007)]; *see also Mesnick*, 950 F.2d at 825 (explaining that "courts may not sit as super personnel departments, assessing the merits . . . of employers' nondiscriminatory business decisions").

---

two other co-workers, Maureen Campbell and Joseph White, of being "white supremacists." *Id.* at 7-8.

*Davila v. Corporacion De Puerto Rico Para La Difusion Publica*, 498 F.3d 9, 16-17 (1st Cir. 2007).

Retaliation is a powerful weapon in the arsenal of discrimination law. What a court must guard against is the conversion of a legitimate sword into an illegitimate shield insulating a disruptive and insubordinate employee from workplace discipline. A government agency cannot be prevented by claims of retaliation from carrying out its legitimate functions, which include maintaining workplace decorum and protecting other employees (and supervisors) from an employee's abusive conduct. *See Abril-Rivera v. Johnson*, 806 F.3d 599, 610-611 (1st Cir. 2015). "Even in retaliation cases 'where elusive concepts such as motive or intent are at issue, summary judgment is appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" *Vives v. Fajardo*, 472 F.3d 19, 21 (1st Cir. 2007) (quoting *Benoit v. Tech. Mfg. Corp.,* 331 F.3d 166, 173 (1st Cir. 2003). If ever a government employer was entitled to summary judgment on a retaliation claim, this is that case.

ORDER

For the foregoing reasons, defendant's motion for summary judgment is <u>ALLOWED</u>. The Clerk will enter judgment for defendants and close the case.

        SO ORDERED.

        /s/ Richard G. Stearns

        _____
        UNITED STATES DISTRICT JUDGE